Joseph **TUCKER**, Nicholas Makris and Charles Tucker on Behalf of Local 70 Bartenders Union of Brooklyn and Queens, Plaintiffs,

v.

Vincent D. **SHAW**, Thomas J. Moore, Clinton Judge, Andrew J. Heummer, Thomas Fabbricatore and Peter F. Brennan, Defendants.

No. 66-C-176.

United States District Court
E. D. New York.

Sept. 27, 1966.

---

James M. Malone, Brooklyn, N. Y., for plaintiffs.

Harold L. Luxemburg, New York City, for defendants.

ROSLING, District Judge.

Plaintiffs, members of Local 70 Bartenders Union of Brooklyn and Queens have brought action as authorized by the Labor-Management Reporting and Disclosure Act of 1959, LMRD, 29 U.S.C. § 501(a)[1] against "six officers"[2] thereof for alleged unlawful diversion of the funds and property of the local. District court jurisdiction of the suit is found in subdivision (b)[3] of the provision

---

1. Subdivision (a) reads in pertinent part as follows:

   "The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. * * *"

2. Defendant Shaw is alleged to be president, Moore, the secretary-treasurer and Clinton Judge a [Union] trustee, the other trustees being Shaw and Moore, of a "Dormant Welfare Fund" which was discontinued, to be replaced in 1959 by the "Bartenders and Tavern Owners Trust Fund." Such latter fund was by bargaining agreement supported by con-

tributions from the employers of the local's membership and administered by six trustees, three being the defendant officials just named, and the other three, selected by the employers, being the remaining defendants Heummer, Fabbricatore and Brennan. The defendants' opposing papers note with unexceptionable accuracy, but with minimal force, that the employer defendants are neither members of the Union nor as trustees of welfare funds amenable to the strictures of section 501. The point of the matter is, however, that Shaw and Moore as the chief officers of the Union unquestionably are thus answerable for the violation of the statutory duties described.

3. Subdivision (b) reads:

   "When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for

cited. The complaint alleges the prerequisite refusal or failure to sue by the local or its officers and the granting of leave by this court to plaintiffs to bring this "proceeding" which is declared in the statute and so described in the pleading as being "for the benefit of the labor organization."

Plaintiffs move for an order pursuant to Fed.R.Civ.P. 65(a) and said § 501(b) for a temporary injunction restraining the local from "defending or otherwise representing the defendants in this action * * * [and] from expending any of its funds for counsel fees or other expenses or disbursements to defend or otherwise represent defendants herein". The local is not a party to this proceeding except in the tangential sense that the action by statutory prescription is brought for its benefit.

Additionally, the movants apply for a direction in the order "disqualifying Harold L. Luxemburg as counsel for defendants herein, and enjoining [him] from appearing for, defending, or otherwise representing defendants in this action".

It is undisputed that Mr. Luxemburg has been general counsel for the union, retained as such for the past sixteen years, and a strong likelihood exists, which one may deduce from the nature of the serious accusations made by plaintiffs against the defendants, that his representation of the union during this long period must have brought his steps near the areas, if any there be, where bodies lie buried.

Mr. Luxemburg argues that "the union does not seek to defend this action, nor is it a party to this action other than by virtue of the plaintiffs having obtained permission to act on its behalf." Announcing that "I am not being paid by the union to defend this case, nor have I, nor will I, seek such payment," he stipulates that "[a]ny fee for defending this action will have to come from the defendants individually."

All this, however, emphasizes the adventitious and accidental, and blinks the substance of the matter. As general counsel he has long represented the interests of the union in gross and derivatively, the interest of the members severally. The accusation directed against the officials is such as to establish them until the issues are adjudicated as potentially hostile to the interests of the union. If the accusation fails of proof, they may well have been put upon by a dissident minority motivated perhaps by no more than a rancorous envy or a selfish hope through favor gained with the rank-and-file to supplant the administration, come next election.[4] On the other hand, if the plaintiffs were to prevail at least as to some signficant fraction of their claims of § 501(a) wrongdoing—and the charges they advance are not so frivolous on their face that that event may be discounted as altogether unlikely [5]—Mr. Luxemburg

good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

4. Balm for defendants' smart may come from reimbursement, proper upon vindication, for their outlay in defending against the charges. Holdeman v. Sheldon, 311 F.2d 2 (2d Cir. 1962); Highway Truck Drivers & Helpers, Local 107, etc. v. Cohen, 284 F.2d 162 (3d Cir. 1960), cert. denied 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744; Murphy v. Washington American League Base Ball Club, Inc., 116 U.S.App.D.C. 362, 324 F.2d 394 (D.C. Cir. 1963).

5. In Holdeman, (see fn. 4 supra), the per curiam memorandum "note[d] approval of the court's suggestion that on motions for injunctions of this sort [to enjoin Union officials charged with violations of § 501(a) (b), from using counsel employed by the Union under an annual retainer to defend them], the district court should, *after a preliminary hearing if necessary,* determine whether the plaintiff has made a reasonable showing that he is *likely to succeed * * *.*"

The italicized language, with such marking supplied for more convenient

will, if permitted to continue as counsel, be exercising his not inconsiderable skills in behalf of those whose activities his statutorily coerced loyalty would require him to reprehend and assail, or at the very least would admonish neutrality. It could indeed be, if the case as it unfolded were close and otherwise might go either way, that these very skills, coupled with access to records and a special familiarity with their content gleaned from years of representation of the Union, might provide a makeweight sufficient to turn defeat for the defendants into a victory that other counsel would not achieve. The plaintiffs, suing in right of their Union, are entitled not to be thus overmatched, nor is it a sufficient answer to assert that the Union is technically not a party to the suit nor likely to be. For its constructive presence is coextensive with its interest, and interested in the outcome it surely is.[6]

In Holdeman, supra, the affirmance of disqualification was broadly based on the fact that defendant union officials were "using counsel employed by the Union under an annual retainer to defend them". That observation, so close in its literal application to what is here under consideration, may not be denied its full force by citing, as Mr. Luxemburg undertakes to do, other cases which in factual and procedural setting are somewhat disparate from the probative environment in the instant suit.[7] The basic element.

reference, poses for the court the problem of evaluating, on affidavits alone, if possible, and on hearing, if not, the detailed and involved charges of wrongdoing which plaintiffs' papers level against the defendants. As part of their documentation, plaintiffs submit the petition filed as required by § 501(b) as basis for the order entered herein on March 21, 1966, permitting plaintiffs to bring this action. Such provision, quoted supra fn. 3, reads in pertinent part: "No such proceeding [as the subject one] shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte."

Defendants have nowhere in their opposing papers challenged except by a sweeping and conclusory generality the substance of what is thus factually adduced by plaintiffs against them. The defendant Moore, secretary-treasurer of the local and trustee of the Tavern Owners Trust Fund, in the sole affidavit of a party submitted in opposition, the only other affidavit being that of the attorney, Mr. Luxemburg, which does not controvert the derelictions alleged, acknowledges that "[a]s the fiscal officer of the Union I am familiar with all of the facts relating to its financial affairs." Yet at a later point in the affidavit he declares, "I do not wish to discuss the merits of the plaintiffs' case in an affidavit relating only to this preliminary motion."

Accordingly, what was originally held sufficient by a judge of coordinate jurisdiction, when presented ex parte in the petition, is for the purpose of this motion found by me to have such prima facie substance that no preliminary hearing appears to be necessary in the absence of issuable challenge as to the facts by the defendants.

6. The sixth canon of professional ethics posts a rubric for conduct in a context of dual representation. "Within the meaning of this canon," the rule admonishes, "a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." Its application to the instant situation is pat.

7. International Brotherhood of Teamsters, etc. v. Hoffa, 242 F.Supp. 246, 255 (D.C.C.1965). "[C]ounsel who are chosen by and represent officers charged with the misconduct, and who also represent the union, are not able to guide the litigation in the best interest of the union because of the conflict in counsel's loyalties."
Murphy v. Washington American League Base Ball Club (fn. 4, supra), quoting from Milone v. English, 113 U.S. App.D.C. 207, 306 F.2d 814, 817 (1962): "[I]f the charges [of official wrongdoing] have substance a sound [the just] resolution may be prevented by the very fact of dual representation during the process leading to a decision with respect to the charges."
Moschetta v. Gross, 43 CCH Labor Relations Cases, p. 24, 892, ¶ 17,058 (D.C. D.C.1961). "The interests of the individual defendant officers [charged with conspiracy to misappropriate funds of the defendant union] and the interests of the defendant union are in conflict. * * * Section 501 of the Labor-Management Reporting and Disclosure

of an attorney's commitment to serve but a single master concretized in the express phrasing of § 501(b) may not be diluted or negated by niggling distinctions.

The motion to disqualify is, accordingly, granted. Injunctive relief, however, being mooted thereby is denied. The order which, if counsel cannot agree upon it as to form, is to be settled on notice, shall contain an implementing provision affording a reasonable opportunity for substitution of new defense counsel.

Act of 1959 prohibits a labor organization from furnishing or paying counsel to defend individual officers in a suit charging the officers with breach of fiduciary duty." To similar effect is Alvino v. Bakery and Confectionery Workers' etc., id. ¶ 17,058 (D.C.D.C.1961). See also Lewis v. Shaffer Stores Co., 218 F.Supp. 238 (S.D.N.Y.1963); and El-berta Oil Co. v. Superior Court, 108 Cal.App. 344, 291 P. 668 (D.C. of App. 4th Dist.Cal.). The fact that Highway Truck Drivers, etc. v. Cohen (fn. 4, supra), cannot be cited in support of plaintiffs' position here does not avail defendants. The point was not at issue therein.