LOCAL NO. 92, INTERNATIONAL AS-
SOCIATION OF BRIDGE, STRUCTUR-
AL AND ORNAMENTAL IRON WORK-
ERS, AFL–CIO, Appellant,

v.

M. E. NORRIS et al., Appellees.

H. L. THACKER, Appellant,

v.

M. E. NORRIS et al., Appellees.

No. 23643.

United States Court of Appeals
Fifth Circuit.

Oct. 2, 1967.

Corretti, Newsom & Rogers, Birmingham, Ala., for appellant H. L. Thacker.

Ernest W. Weir, James L. Shores, Jr., Douglas P. Corretti, James W. May, Birmingham, Ala., Johnston & Shores, Weir & Shannon, Birmingham, Ala., of counsel, for appellant Local No. 92.

C. V. Stelzenmuller, Birmingham, Ala., Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., of counsel, for appellees.

Before BROWN, Chief Judge, and MOORE,* and BELL, Circuit Judges.

JOHN R. BROWN, Chief Judge:

These appeals involve a derivative suit brought under § 501(b) of the LMRDA,

---

* Of the Second Circuit, sitting by designation.

29 U.S.C.A. § 501(b)[1] by four individual members [2] of the Local [3] charging certain named Local officials with breach of their fiduciary obligations as set out in § 501(a), 29 U.S.C.A. § 501(a).[4] We affirm.

Although brought in its behalf the Local was not formally made a party to the action. Besides the general prayer for relief, the complaint specifically sought an accounting and judgment [5] against the named defendants, the appointment of a special master, an injunction prohibiting defendants from further wrongful acts, and an award of attorney's fees out of any recovery.

The matter was referred initially by the District Court to a Special Master on June 27, 1962, who, after examining the books and records of the Local and receiving considerable oral testimony, found that Local officials Thacker and Green had received salaries and expense allowances which had "not been duly authorized and properly paid of the funds of said Local Union by action of the membership thereof." Following the presentation of additional testimony in hearings before the District Court,[6] the Court entered judgment on October 26, 1965, accepting the basic findings of the Special Master regarding the unauthorized salary and expense allowances and ordering that the Local recover from Thacker and Green the sum of $22,896.01.[7] It was provided that if the judgment against Thacker and Green was not satisfied within 60 days the Local would be liable not only for the fees of the Special Master but also for the fees of

1. "(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropirate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

2. The suit was brought by four members "suing for and on behalf of Local No. 92, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO, an unincorporated association doing business as a labor organization * * * and as representatives of the class of persons composed of the members of said Local 92 * * *."

3. Local 92, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO.

4. Charged in the complaint were eight persons, each of whom was, or had been an official of the Local including C. H. Green, financial secretary-treasurer and business agent, and H. L. Thacker, assistant business agent.

5. The complaint sought to "recover for the benefit of Local 92 a judgment against defendants, separately and severally, for such sum as is found to be due from them to Local 92, including restitution of moneys wrongfully disbursed, compensation for assets of Local 92 wasted, and damages for the consequences of their said official misconduct."

6. Two additional hearings were held. In the first, the testimony was limited solely to determining "whether the [weekly expenses of Green and Thacker] * * * were duly authorized as provided by the constitution and bylaws of the Union." The second hearing was for determining the amount and who should be charged with the fee of the Special Master, the amount of the attorney's fees to be allotted from the recovery, and whether any necessity existed for injunctive relief from further wrongful acts.

7. The computations were limited to unauthorized allowances subsequent to September 14, 1959, the effective date of § 501, on the ground that the amendments to the Act are not retroactive. In support the District Court cited Highway

counsel (and accountants) retained by the plaintiff members of the Local to prosecute the § 501(b) action.[8] These fees totaled $19,946.60,[9] leaving a net award to the Local of $2,949.41. The Local was also enjoined from paying any salary to Thacker [10] if the judgment against him remained unsatisfied at the end of the sixty-day period.[11]

From this final judgment, separate appeals asserting different grounds are taken by Thacker, individually, and by the Local. Thacker urges first that the questioned items were properly ratified by the Local, thus precluding violation of his fiduciary duties as set out in § 501 (a) and second, that the District Court erred in denying his timely motion for a jury trial on the issue of damages. The Local contends that, based on the wording of § 501(b), it should not be liable for the fees of counsel retained by the members of the Local to prosecute the suit unless it collects the judgment. At-

tacking the jurisdiction of the District Court, it urges that, on analogy to a stockholder derivative suit, the Local was an indispensable party to the action yet not joined and therefore the judgment is void. Related to this is the contention that since the Local was not formally a party to the action, the District Court could not properly enter an order rendering it liable for counsel fees and expenses incurred by the members who brought the action. Finally the Local apparently questions that part of the order enjoining further payments to Thacker until the judgment is satisfied. We find all these contentions without merit, and affirm the judgment of the District Court.

## I

### A. Ratification

Thacker, who occupied a position which imposed upon him the fiduciary responsibilities of § 501(a),[12] had the duty to

---

Truck Drivers & Helpers Local 107 v. Cohen, D.C.Pa., 1960, 182 F.Supp. 608, affirmed 3 Cir., 284 F.2d 162, cert. denied 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744; Holton v. McFarland, D.Alaska, 1963, 215 F.Supp. 372; and Flaherty v. McDonald, S.D.Cal., 1960, 183 F.Supp. 300.

8. "6. That the sums awarded * * * are hereby made a charge against Local No. 92, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO, an unincorporated association doing business as a labor organization, and shall be first payable from the proceeds of the judgment and costs herein entered and taxed, but if any part thereof is not within sixty days realized from the proceeds of said judgment and costs, Local No. 92 shall pay the same and shall have a right to be reimbursed therefor when and as collected."

9. The fees awarded are as follows:

| | |
|---|---|
| Special Master | $ 3001.13 |
| Accountants | 1216.00 |
| Attorneys | 15729.47 |
| | $19,946.60 |

The accountants fees were incurred as the result of an examination of the books and records of the Local at the request of counsel.

10. The defendant Green resigned from the Union on October 5, 1962, prior to the date of the judgment.

11. "7. That said Local 92, its officers, agents, servants, employees, members and attorneys and those persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, be and they each are hereby enjoined from and after sixty days from the date of this order paying H. L. Thacker any sums as salary, expenses, or otherwise. The prayer for injunction in other respects is denied, but without prejudice to a renewal of the application therefor in this action."

12. § 501. "Fiduciary responsibility of officers of labor organizations—Duties of Officers: exculpatory provisions and resolutions void.

"(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and properties solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitu-

expend union funds "in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder * * *." He urges that the salary and expense allowance items here questioned were properly authorized under the existing constitution and bylaws of the Local and that therefore he may not be charged with breach of his fiduciary responsibilities. The congressional intent, as evidenced by the debates [13] in Congress regarding the proposed legislation, appears to support the proposition that there is no violation of § 501(a) where union funds are expended in accordance with the Union's constitution and bylaws. But such is not the case here.

■■ We think the record amply reflects, as found by the Special Master [14] and the District Court, that the salary and expense allowances here involved were not properly authorized or ratified by the Local membership under its constitution. Only a brief sketch is needed to point out that the action of these insiders compelled the Court's findings. The International Union had taken over control of the Local's affairs on March 18, 1955, and its appointees, including Thacker, remained in control until January 21, 1957. During this period, meetings of the membership of the Local Union were suspended. The appointed officers adopted a bylaw on June 13, 1955 which excepted current bills and salaries of employees from the requirement of authorization by the membership. This was in direct conflict with, and contravention of, provisions of the constitution [15] of the International Union which remained applicable to the Local. Thereafter, on December 10, 1956, the officers adopted a resolution purporting to increase the expense account of Green and Thacker by $35 a week. This increase was not then nor thereafter ap-

tion and bylaws and any resolutions of the governing bodies adopted thereunder, * * *. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."

13. The legislative history provides us with some insight regarding the Congressional intent underlying § 501(a) of the Act. "The bill does not limit in any way the purposes for which the funds of a labor organization may be expended or the investments which can be made. Such decisions should be made by the members in accordance with the constitution and by-laws of their union. Union officers will not be guilty of breach of trust under this section when their expenditures are within the authority conferred upon them either by the constitution and by-laws or by a resolution of the Executive Board, convention or other appropriate governing body, including a general meeting of the members—not in conflict with the constitution and by-laws. This is also made clear by the fact that Section 501(a) requires that the special problems and functions of a labor organization be taken into consideration in determining whether union officers and other representatives are acting responsi-

bly in connection with their statutory duties."
II Legislative History at 1433 (Sept. 3, 1959); 105 Daily Cong.Rec. 16415 (Sept. 3, 1959) (Remarks of Senator John F. Kennedy).

14. The testimony before the Special Master was not transcribed. His findings, therefore, were conclusive unless clearly erroneous on the face of his report. See Bynum v. Baggett Transportation Co., 5 Cir., 1956, 228 F.2d 566, 569; F.R.C.P. 53(e)(2).

15. "Article XXIV.
"Constitution Governing All Local Unions.
"Sec. 1. Officers.
* * *
"Par. 4. No office shall be made or abrogated, or salary for same be changed, without written notice, to be read at three consecutive meetings, at which final action shall be decided by a majority vote.
* * *
"Sec. 4. Duties of Treasurer.
"Par. 1. The Treasurer shall pay through the Financial Secretary only such bills and accounts as are dated and signed properly and have received a majority vote of the members present at the regular meeting, signed by the President and attested by the Recording Secretary."

proved by the membership of the Local. After control had been restored to the Local, a resolution was passed by the Executive Committee which had the effect of combining the previously authorized expense allowance with their salary, their take-home pay remaining unchanged.[16]  Again, this resolution was not adopted by the membership nor was it read at three successive meetings as required by the Constitution (see note 15 supra).

█  The upshot is that Thacker's argument of ratification or authorization must fail.  There was, in short, a flagrant abuse of power by statutory fiduciaries in breach of trust.

### B.  *Jury Trial*

█  Thacker next contends that the District Court erred in denying his motion, timely filed, for a trial by a jury of the damage issue.  He urges that since damages are sought as an element of relief, the right to a jury trial is of primary importance.

In support of his argument, Thacker relies exclusively on the case of Simmons v. Avisco, Local 713, Textile Workers Union of America, 4 Cir., 1965, 350 F.2d 1012.  We do not think that case is controlling.  *Simmons* involved a suit brought under § 102 LMRDA, 29 U.S. C.A. § 412, by an official of the local union who allegedly had been wrongfully suspended.  He sought injunctive relief and "damages, both actual and punitive, for loss of income, mental anguish, and injury to reputation caused by the illegal suspension."  350 F.2d at 1015.  Disagreeing with a then recent decision of the Sixth Circuit,[17] the Court was of the

opinion that the suspended official was entitled to a jury trial of the damage issue.  "The plaintiff here is suing both at law and in equity.  He seeks an injunction to effect his restoration to membership.  He also seeks money damages for injury to reputation, and resulting mental anguish—a cause of action of which the developing common law of torts certainly takes cognizance.  We see no reason for not allowing a jury to determine whether the union's wrongful conduct was the proximate cause of the plaintiff's injuries and how much the plaintiff is entitled to recover therefor. A jury determination of damages in no way affects the equity jurisdiction of the judge over the injunction issue."  350 F.2d at 1018.

We need not choose between either the Fourth or the Sixth Circuits, or perhaps both.  It is sufficient for our purposes that we think the opinion of the Fourth Circuit in *Simmons* is distinguishable.  The nature of the relief sought in *Simmons* was clearly within the realm of a common law tort cause of action.  The controlling issues— whether the union was guilty of wrongful conduct, whether such conduct was the proximate cause of the injuries, and the amount of the injury—are issues which traditionally are within the province of the jury to determine.  In our case, however, the relief sought is, not only in name but in substance, traditionally equitable.  The members of the Local seek to compel an accounting, the end result of which would be to restore to the Local's treasury any funds found to have been misappropriated by the officials of the Local in violation of the fiduciary responsibilities imposed upon

---

16.  This led in 1959 to an additional increase in the salaries of Green and Thacker to make up for the added tax burden resulting from lumping the expense allowance with salary.  There is no indication that this was ever submitted to or even known by the membership.

17.  McCraw v. United Association of Journeymen, etc., 6 Cir., 1965, 341 F.2d 705. The *McCraw* court held that the right

to a jury trial preserved by the Seventh Amendment "has not application to cases where recovery of money damages is an incident to an action seeking equitable relief, even though damages might have been recovered in an action at law.  It does not apply where the proceeding is not in the nature of a suit at common law.  The present case is not a suit at common law or in the nature of such a suit.  It is a statutory proceeding, unknown to the common law."

them by the Act, and perhaps more important, to rid the Local of such pernicious infections for the future. These issues are traditionally for the decision of the Chancellor, and no mandatory right to a jury exists.

The Fourth Circuit apparently thought that the right to a jury was compelled by virtue of the more recent decisions of the Supreme Court,[18] with which the Fifth Circuit is now firmly aligned.[19] All of these cases, including the present one, involve the difficult problem of distinguishing, on the basis of the type of relief sought and not just from the terminology of the pleadings, between a cause of action which is legal in nature and one that is equitable. These cases did not, however, foreclose from a non-jury determination a cause of action which, by its nature and as construed in the complaint, is traditionally equitable. As articulated in *Swofford*, "Beacon Theatres, Dairy Queen, and Thermo-Stitch * * * resolve the problem in each of their respective situations by requiring the factual issues common to the 'legal' claims, or remedies, and the 'equitable' claims, or remedies, to be tried by a jury. This is not to say, however, that they have converted typical non-jury claims, or remedies, into jury ones. Therefore, we reject a view that the trio of Beacon Theatres, Dairy Queen, and Thermo-Stitch is a catalyst which suddenly converts *any* money request into a money claim triable by jury." (Emphasis in the original.) 336 F.2d at 414.[20]

And herein, we think, lies the distinction. Unlike *Dairy Queen* and *Swofford*, we construe the present complaint not as seeking "damages in the legal sense" but rather "requesting an equitable accounting wherein damages may be determined * * *." Swofford v. B & W Inc., supra, 336 F.2d at 410. Framing the prayer for relief of the complaint in terms of an "accounting" was neither an empty verbal formalism nor a sham employed merely to defeat Thacker's right to a jury determination of the extent if any, of his breach of trust. This finds support in the setting of the parties. The fiduciary responsibilities of § 501(a) (see note 12 supra) imposed upon the officials of the Local duties analogous to those of a trustee,[21] with the members of the Local as the beneficiaries of the trust thus created. Traditionally, the remedies of the beneficiary of a trust against the trustee were exclusively within the jurisdiction of equity.[22] And it does not become so "legal" as to compel jury intervention merely because the "accounting" is inevitably in dollars.

18. Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988; Dairy Queen, Inc. v. Wood, 1962, 369 U.S. 469, 82 S.Ct. 894, 8 L. Ed.2d 44.

19. Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 5 Cir., 1961, 294 F.2d 486; Swofford v. B & W Inc., 5 Cir., 1964, 366 F.2d 406.

20. Compare the analysis in Volume 2B Barron & Holtzoff, Federal Practice and Procedure § 872 (Wright Ed.1961, supp. 1966). "Dairy Queen has surely not answered all the questions suggested by Beacon Theatres. It has answered some of them, and its renewed emphasis on the fact that the procedural innovations of the rules—such as, in the case, the provision for the appointment of a master—have sharply diminished the scope of traditional equitable remedies by making them unnecessary in many cases strengthens the impression that the Court does, in fact, intend to require a substantial expansion of jury trial in areas where heretofore a jury has been thought unnecessary."

21. This is, of course, an analogy only. Owing to the peculiar nature of a union and the business it transacts, the duties imposed by § 501(a) may not be so stringent as those imposed, say, on the trustee of an active trust. See the quotation from the Congressional Record note 12 supra.

22. See, e.g., Restatement (Second) of Trusts § 198, comment d: "Active trusts. If the trustee misappropriates money which it is his duty to continue to hold in trust, the beneficiary * * * cannot maintain an action at law against the trustee. His remedy is a suit in equity to compel the trustee to restore the money misappropriated and to hold it in trust or to pay it to a new trustee."

In sum, we think that the relief here sought, even though contemplating an award of money, was relief traditionally equitable in nature, and that therefore the District Court did not err in denying the motion for a jury trial. This makes it unnecessary to assay another acceptable justification for denial of jury trial— the exceedingly complex nature of the accounting.[23]

## II

### A. Liability of the Local for Counsel Fees

The issue presented by the Local on this appeal is whether it "is liable for payment of the fees and expenses of the accountants and attorneys regardless of the collection of the judgment against the defendants," and additionally whether it is properly enjoined from paying its funds to Thacker. The argument of the Local is twofold. First, the Local gets less than $3,000 for which it must now pay from member's dues nearly $20,000 (see note 9 supra). Second, it was not formally made a party to the action. Consequently it contends, because it was an indispensable party to the action, the judgment is void since there could not properly be any adjudication of its rights when it was not before the District Court.

§ 501(b) of the Act (see note 1 supra) provides that "[t]he trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation." The first issue we must decide is what is meant by the term "recovery." Does it mean, as contended by the Local, that the Union's liability for counsel's fees as the result of a § 501(b) suit is conditioned upon the recovery of a substantial monetary judgment which has been satisfied by the union officials who breached their fiduciary responsibilities? We think not.

Nothing in our examination of the legislative history of this particular provision discloses the Congressional meaning underlying the word "recovery" in § 501(b).[24] But courts have had to construe this statutory language have uniformly rejected the restrictive interpretation urged by the Local. Bakery & Confectionery Workers International Union of America v. Ratner, 1964, 118 U.S.App. D.C. 269, 335 F.2d 691; Milone v. English, 1962, 113 U.S.App.D.C. 207, 306 F.2d 814; Highway Truck Drivers & Helpers Local 107 v. Cohen, E.D.Pa.1963,

---

23. See our decisions in Vess v. Fred Astaire Dance Studios, 5 Cir., 1956, 229 F.2d 892; H. B. Zachry Co. v. Terry, 5 Cir., 1952, 195 F.2d 185, cert. denied 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637; and Harlan, J., concurring in Dairy Queen, supra, 369 U.S. at 480, 82 S.Ct. at 901.

24. See for example H.R.No. 741, 1 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 802–03; Senate Committee Analysis, Id. at 960. The committee reports are also found in 2 U.S. Code Cong. & Adm.News, 86th Congress, 1st Sess., 2318–2502 (1959).

The only reference to this particular portion of the statute is found in the concern voiced by Senator Goldwater that the term "recovery" might be construed in a manner to impede the purposes of the provision. He noted that the proposed bills, as worded, conditioned

"the payment of costs of actions under the fiduciary provisions by the defendant upon 'recovery' by the plaintiff. Since under the House Bill the recovery of misused funds is not the only relief which may appropriate under that provision, limitations on payments of costs of defense to instances in which there is a recovery may defeat one of the purposes of the provision, namely, to facilitate member actions to enforce the duties and responsibilities imposed by the Bill." II Legislative History at 1359; 105 Daily Cong.Rec. 15119 (August 20, 1959). Unfortunately, the Senator's concern was never clarified. This Congressional inaction was early interpreted to mean that "the plaintiff's attorney's fee and the member's expenses [could] be paid only when the Court awards a money judgment." Dugan, Fiduciary Obligations Under the New Act, 48 Geo.L.J. 277, 302 (1959).

220 F.Supp. 735. These decisions reflect the view that the award of attorney's fees should be based primarily upon the benefits that have been realized by the union as a result of the suit instituted for it by its members. Thus *Ratner* phrases it this way. "[T]he services rendered by * * * [counsel for the members of the union] are to be measured in terms of the value of the benefits afforded to the International and its membership. * * * [T]he accomplishment of benefits to the membership as 'appropriate relief' might well be achieved under court authority without monetary 'recovery' as such. The payment of fees earned and reimbursement of expenses incurred became the obligation of International under traditional equitable principles which were simply called into play pursuant to the authorization for action under § 501. * * * [T]he language [of § 501 (b)] is permissive. It means no more than this: where a monetary recovery has in fact been achieved, that fund may constitute a source from which the trial judge 'may allot a reasonable part' for the payment of counsel fees and disbursements." 335 F.2d at 696–697.

■■ It is therefore apparent that the statutory liability of the Local for attorney's fees attaches regardless of whether the monetary judgment against Green and Thacker is satisfied. So long as the Union realizes some substantial benefit as the result of the litigation it stands liable for the fees due the specified persons who secured these benefits. Thus, in some circumstances, the award of attorney's fees based upon the reasonable value of the benefits conferred might exceed the net of a monetary judgment secured on behalf of the union.[25] In other instances, an award of attorney's fees would be justified even though the benefit conferred was some form of relief other than a monetary judgment.[26] In this case, the District Court in making the award of attorney's fees stressed the benefits that had been realized by the Local through the efforts of counsel employed by the members who instituted the suit.[27]

The Local raises no question regarding the reasonableness of the amount of the award. We find therefore that there is no merit to the Local's contention that satisfaction of the judgment is a prerequisite to its liability or that the Local

25. In *Cohen*, for example, the suit prosecuted on behalf of the union resulted in a verdict of $24,921.41, yet the Court awarded attorney's fees and expenses of $38,470.90. Moreover, the Court concluded that "the Union has benefited although up to date there has been no money paid. The fact of benefit is enough." 220 F.Supp. at 738.

26. See e.g., Johnson v. Nelson, 8 Cir., 1963, 325 F.2d 646 where the relief sought was a mandatory injunction compelling certain officials of the local to approve expenditures authorized by the membership.

27. "Although this action is by the plaintiffs as members of Local No. 92 pursuant to Section 501(b), it is for the benefit of the Local. Consequently, the legal services rendered by counsel for the plaintiffs have inured to the benefit of the Local and its members. The litigation here involved was of a complex nature and required a high degree of skill and extensive effort over a long period of time. The filing and prosecution of the litigation has had a salutary effect on the conduct of the affairs of the Local, and in the Court's opinion has obviated the present necessity for an injunction as part of the relief sought by the plaintiffs, except as to the enforcement of the judgment rendered herein. The same findings and observations are equally applicable to the expenses incurred by plaintiffs' counsel, and with respect to the services and expenses rendered by Dent & Corr.

"The Special Master's fee will be taxed as costs against the defendants in the respective amounts above stated, and the fee as a whole, the attorney's fees and expenses, and the fees for services and the expenses of Dent & Corr, [Accountants] will be imposed as a charge against Local No. 92, and if any part of such fees and expenses is not collected from the defendants out of the proceeds of the judgment and costs within sixty days from the date of this order, Local No. 92 shall pay the same and shall have a right to be reimbursed therefor when and as collected."

may not be required to pay out of its treasury substantial sums in excess of the net recovery (even if paid).

## B. *Failure to Join the Local as a Party*

Nor do we think there is any merit to the Local's contention that it should have been formally joined as a named party to the action before the District Court would have jurisdiction to enter an order rendering it liable for the attorney's fees. The Local, conceding that the four union members were sufficiently representative for the purpose of bringing suit, contends that these same members were not equally representatives for having the entire membership adjudged liable for the expenses incurred by the members who instituted the suit. The Local distinguishes cases [28] in which an action was brought under § 501(b) without joining the union as a party by noting that "the only claims being asserted were on behalf of the labor organization and not *against* it or its membership." (Emphasis in the original).

▆▆ In these contentions, the Local fails to take into consideration the nature of the action contemplated by § 501(b) and the basis for allowing an award of attorney's fees thereunder. The award of attorney's fees under the statute is not, as the Local here seems to make it, an award in the nature of an action against the Local or its Membership. This is merely the allowance of costs

fairly attributable to the services performed. From the inception of this suit against the Local officials, the only claims which have been asserted have been on behalf of the Local, not against it. And it is the benefits to the Local that have been secured as a result of such claims which serves as the main basis for allowing fees to those persons by whose efforts such benefits were attained. Under equitable principles, the Local—which was certainly a vicarious party-plaintiff—may be held accountable for the benefits which have resulted from an action on its behalf.[29]

▆ We also think it clear that the Local is not an indispensable party to the action, a party without whom the District Court lacks jurisdiction. To the contrary, in same cases, allowing the union formally to join in the action as a plaintiff or compelling its joinder as a defendant might result in a serious conflict of interests. In Holdemen v. Sheldon, supra, the union sought to intervene in the action to assist officials charged with violation of their fiduciary duties under § 501(a). Intervention was denied on the ground that to allow the union to assist in the defense of persons charged with violation of their duty to the union would be inconsistent with the purposes underlying the Act. See also Tucker v. Shaw, supra. We need not speculate when the union might properly, if ever, join in the action, or the nature of the claims it might then assert.[30] In the present cir-

28. Counsel for the members of the Local cite Holdemen v. Sheldon, S.D.N.Y., 1962, 204 F.Supp. 890, affirmed 2 Cir., 311 F.2d 2; Tucker v. Shaw, E.D.N.Y., 1966, 269 F.Supp. 924, 54 L.C. ¶ 11,502; Nelson v. Johnson, D.Minn., 1962, 200 F.Supp. 559, 212 F.Supp. 233, affirmed, 8 Cir., 1963, 325 F.2d 646; Schonfeld v. Rarback S.D.N.Y., 1965, 61 LRRM 2043; Robinson v. Weir, D.Neb., 1966, 54 L.C. ¶ 11,536.

29. "Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation. Whether one professes to sue representatively or

formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation * * * hardly touched the power of equity in doing justice as between a party and the beneficiaries of his litigation." Sprague v. Ticonic Nat'l Bank, 1939, 307 U.S. 161, 166–167, 59 S.Ct. 777, 780, 83 L.Ed. 1184, 1187.

30. See Counsel Fees for Union Officers Under the Fiduciary Provision of Landrum-Griffin, 73 Yale L.J. 443, 459 (1964).

cumstances, it is enough that the Local has realized benefits for which it may properly be held accountable under the Act.

Finally, it was not error for the District Court to enjoin the Local from paying out any more of its funds to Thacker while the Judgment in favor of the Local against him remained unsatisfied. This was nothing more than a "reasonable effort to collect and protect the judgment." Highway Truck Drivers & Helpers, Local 107 etc. v. Cohen, 3 Cir., 1964, 334 F.2d 378, 381.

The judgment of the District Court was right.

Affirmed.