Eugene A. McCABE, Plaintiff-Appellee,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 1377, and Peter J. Zicarelli, and John H. Saviano, Defendants-Appellants.

Nos. 18318–18320.

United States Court of Appeals
Sixth Circuit.

Aug. 14, 1969.

---

6. 3 Williston on Contracts, 3rd ed., §§ 495, 499; Roxana Petroleum Co. v. Rice, 109 Okl. 161, 235 P. 502.

Joseph E. Finley, Cleveland, Ohio, for appellant Saviano; Metzenbaum, Gaines, Krupansky, Finley & Stern, Cleveland, Ohio, on brief.

Arlene B. Steuer, Cleveland, Ohio, for appellant Zicarelli; Cozza & Steuer, Cleveland, Ohio, on brief.

Victor L. Cody, Cleveland, Ohio, for appellant Local 1377.

William B. Webber, Cleveland, Ohio, for appellee; Calvin L. McCoy, Cleveland, Ohio, on brief.

Before COMBS, Circuit Judge, McALLISTER, Senior Circuit Judge, and KENT, District Judge.[*]

KENT, District Judge.

This is an appeal from a judgment entered in the United States District Court for the Northern District of Ohio, Eastern Division, by the Honorable Girard E. Kalbfleisch, District Judge. After trial, without a jury, the Court found that the defendants, John H. Saviano and Peter J. Zicarelli, both officers of Local 1377, International Brotherhood of Electrical Workers, had received money from the Local during the years 1960 through 1964 inclusive in violation of Section 501(a) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 501(a) [Landrum-Griffin Act].

[*] Honorable W. Wallace Kent, Chief Judge, Western District of Michigan, sitting by designation.

The Local in question was chartered in 1944 at the request of the defendant Zicarelli, who served as Business Manager of that Local from the time it came into existence and was serving as Business Manager at the time of the trial in question. The defendant Saviano became a Business Representative of Local 1377 in 1956 and continued to hold that position until after the trial of this case. He also served as President of the Local during the years 1962 to 1964.

Prior to 1960 expenses incurred by the Business Manager and the Business Representatives of Local 1377, for the benefit of the Local Union, were itemized on vouchers and presented to the Executive Board of the Local for approval. After approval by the Executive Board the expenditures were submitted to the Local at a membership meeting for final approval. After such final approval the Business Manager and the Business Representatives were reimbursed for such expenses.

Sometime in 1959 a Certified Public Accountant, hired by the Local, suggested to the defendant Zicarelli that the evidence submitted relative to expenditures for the benefit of the Local was inadequate and that he anticipated the possibility of difficulty with the Internal Revenue Service in the event of a tax audit. The Accountant recommended that in lieu of the method pursued until that time the Business Manager and the Business Representatives be given a fixed amount each week which would be treated as salary paid to the Business Manager and the Business Representatives, in the books of the Local, with proper deductions for withholding taxes and Social Security payments. The recommendation of the Accountant was submitted to the Executive Board of Local 1377 and it is asserted that the Board then approved a plan whereby defendant Zicarelli, as Business Manager, was to receive an additional $126.87 per week, from the Local, which after deduction of withholding taxes and Social Security payments would result in a net

payment of $85 per week, and each of the three Business Representatives, including the defendant Saviano, were to receive $61.90 per week, from the Local, which after deduction of withholding taxes and Social Security payments would result in a net amount to each of such Business Representatives of $50 per week. No expense voucher or other proof of expenditure was required in support of these payments.

After this procedure was placed in effect the amounts paid to the individuals in question were referred to as "per diem". Testimony was offered in support of the claim of the approval of the above plan by the Local's Executive Board but there is no written record of such approval. There was also some testimony that the plan was *discussed* at membership meetings.

The provisions relating to salaries are set forth in Article VIII of the By-laws of Local Union 1377. Under the By-laws the Business Manager, Zicarelli, received as a salary an amount equal to 65% above the maintenance construction rate effective during each year. Each Business Representative received a salary equal to 35% above the maintenance construction rate. An individual holding one of the above positions and also serving as president of the Local, as defendant Saviano did, was permitted to receive the President's salary of $25 per month in addition to the salary provided by the By-laws. The By-laws also made provision for payment of "expenses" upon preparation of vouchers and proof of the amount of expense incurred. All expense payments were to be approved by the Executive Board and by the membership. The By-laws did not make any provision for the payment of "per diem" in lieu of expenses and did not make any provision for treatment of such "per diem" as "salary."

These facts, with the additional testimony that the matter had been submitted to legal counsel (deceased at the time of trial), might suggest that the defendants' Executive Board and the Local had received and acted upon poor advice.

However, despite the fact that the "per diem" payments were intended to reimburse the Business Manager and the Business Representatives for their expenses on behalf of the Union, the evidence demonstrated that the defendants continued to request and receive additional reimbursement for expense from time to time. They received their "per diem" (expense) not only for the 52 weeks in the calendar year but also for vacation periods in addition to the 52 weeks, which vacation checks were presumably based upon the salary provided by the By-laws of the Local.

The testimony offered at the time revealed that the defendant Zicarelli not only founded the Local but continued to exercise dominant control over the Local and its affairs from the time that the Local's charter was granted to the time with which this case was concerned. The Trial Judge so found in his findings of fact.

The plaintiff-appellee Eugene McCabe, a member of Local 1377, became concerned about the financial affairs of the Union after reading an article in the *Cleveland Press* which drew comparisons between the gross income and assets of Local 1377 and Local 37, the other major IBEW Union in the area. According to the newspaper Local 1377 had a gross income of $224,000 and an overall deficit of $30,000, whereas Local 37, which had a gross income of $210,000, had assets of $500,000. The newspaper made mention of the fact that the Business Manager of Local 37 drew a salary of $14,000, while defendant Zicarelli was drawing a salary of $22,000.

Beginning in 1963 plaintiff McCabe pursued the internal procedures of Local 1377 and the International Union in an effort to require adherence by the Local and the defendants to the provisions of the Constitution and By-laws of the Local and the International Union relating to salaries, expenses and disbursement to, and on behalf of, employees of the Local.

Under the guidance of defendant Zicarelli, an attempt was made to amend the By-laws to permit payments as recommended by the accountant. Admittedly, when the proposed amendment to the Local By-laws was submitted to International President Gordon Freeman, the per diem provision was rejected as being clearly improper. It is claimed on behalf of plaintiff-appellee that the procedures followed in an attempt to amend the By-laws within the Local were not in accord with the provisions of the Constitution and By-laws of the Local and the International Union. After receipt of a letter from International President Freeman, dated June 1, 1964, by which the per diem amendment was rejected, the use of per diem payments was discontinued by the Local.

On the basis of the factual situation outlined above the District Court found that defendants Zicarelli and Saviano had a fiduciary obligation to Local 1377 and found that the fiduciary obligation had been breached, in violation of Section 501(a) of the Labor-Management Reporting and Disclosure Act of 1959. Judge Kalbfleisch held that the defendants Zicarelli and Saviano were liable to Local 1377 for all per diem payments which they had collected. He refused to permit any setoffs until the two defendants had obtained approval from the membership of Local 1377 of their alleged expenditures on behalf of the Local, during the period when the per diem payments were being made. The District Court rejected any other basis for setoff and held that the only proper basis was reimbursement for actual out-of-pocket expenses incurred by the defendants Zicarelli and Saviano and approved by the Local Union pursuant to the By-laws.

 Section 402(q) of the Act defines "officers, agents, shop stewards, and other representatives" of a union—

" 'Officer, agent, shop steward, or other representative', when used with respect to a labor organization, in-

cludes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried nonsupervisory professional staff, stenographic, and service personnel." 29 U.S.C.A. § 402(q).

Section 501(a) of the Act provides in part:

"The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. * * *" 29 U.S.C.A. § 501(a). (Emphasis added.)

Defendant Zicarelli, as Business Manager of Local 1377, and defendant Saviano, as Business Representative and at times President of the Local, clearly fall within the definition of "officers, agents, shop stewards or other representatives" of Local 1377, and clearly occupied positions of trust with fiduciary responsibility to the Local.

The duties of those holding such fiduciary positions in a labor organization are set forth in Section 501(a) of the Act, which provides in part:

"* * * It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any

profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy." 29 U.S.C.A. § 501(a). (Emphasis added.)

Under the provisions of Article XIV, Section 7 of the By-laws of Local 1377, the Constitution of the International Brotherhood of Electrical Workers (hereinafter referred to as IBEW) is made a part of the By-laws of the Local. The By-laws of the Local further provide that where there is any doubt about the meaning of a Section of the By-laws, or where there appears to be a conflict between the By-laws of the Local and the IBEW Constitution, the Constitution is controlling.

Article XX, Section 5 of the IBEW Constitution makes provision for payment of out-of-pocket expenses to Local Union officials. Such provision provides that claims for reimbursement for expenses incurred must be supported by an itemized expense accounting with receipts attached and must be approved by the Local's membership. Prior to 1960 the method provided by the IBEW Constitution for the reimbursement of expense was followed by Local 1377 and its employees, although according to the accountant the proof of actual expense was somewhat "sketchy." In 1960 the change to the "per diem" method of reimbursement was commenced and this was clearly in violation of Article XX, Section 5 of the IBEW Constitution.

It appears that the trial court's conclusion that the defendants Zicarelli and Saviano violated their fiduciary responsibilities is supported by overwhelming evidence. The fact that each defendant accepted the "per diem" payments, which were treated as salary,

and continued to seek and receive reimbursement for expenses in accordance with the IBEW Constitution might well have caused the trial court to conclude that the defendants had obtained an increase in salary without the approval required by the By-laws of the Local and the IBEW Constitution.

The claim on the part of the appellants that the By-laws of the Local had been validly amended in December, 1963, is clearly without merit. The evidence shows that the method used for amendment of the By-laws did not comply with Article XV, Section 2 of the By-laws and did not comply with the IBEW Constitution. In addition, there appears to be no question but that there had been no effort to amend the Local By-laws until December, 1963.

Defendants Zicarelli and Saviano contend that they were only innocent bystanders without any vote in the Executive Board in 1960. They argue that as such innocent bystanders they should not be held liable to the Local for the payments received. The District Court after hearing the testimony concluded that the defendants Zicarelli and Saviano were not innocent bystanders, that in reality Zicarelli was the moving force and resident power in the Local, that he suggested the per diem payments to the Executive Board, that under Article VI of the Local By-laws, which defines the duties and responsibilities of the Business Manager, defendant Zicarelli held a powerful position within the Local despite the lack of a vote on the Executive Board. The District Court was satisfied from all the evidence that the individual defendants were the dominant power in Local Union 1377.

The Trial Court is the trier of the facts and this court cannot reverse the findings of the trial court unless they are clearly erroneous. Rule 52(a) Federal Rules of Civil Procedure. Strickler v. Pfister Associated Growers, Inc., 319 F.2d 788 (6th Cir., 1963); Walling v. General Industries Co., 155 F.2d 711 (6th Cir., 1946), aff'd. 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947).

It is clear to this court that the District Court's findings of fact as to the influence and dominant position within the Local Union of the defendants Zicarelli and Saviano are supported by substantial testimony.

A similar fact situation was before the Court of Appeals for the Fifth Circuit in Local No. 92, Int. Ass'n. of Bridge, S. & O. I. Wkrs. v. Norris, 383 F.2d 735 (5th Cir., 1967). The Court of Appeals for the Fifth Circuit in finding that the Assistant Business Agent of the Local violated Section 501(a) of the Act had this to say:

"Thacker, who occupied a position which imposed upon him the fiduciary responsibilities of § 501(a), had the duty to expend union funds 'in accordance with its constitution and by-laws and any resolutions of the governing bodies adopted thereunder * * *.' He urges that the salary and expense allowance items here questioned were properly authorized under the existing constitution and by-laws of the Local and that therefore he may not be charged with breach of his fiduciary responsibilities. * * * But such is not the case here.

"We think the record amply reflects, as found by the Special Master and the District Court, that the salary and expense allowances here involved were not properly authorized or ratified by the Local membership under its constitution. Only a brief sketch is needed to point out that the action of these insiders compelled the Court's findings. The International Union had taken over control of the Local's affairs on March 18, 1955, and its appointees, including Thacker, remained in control until January 21, 1957. During this period, meetings of the membership of the Local Union were suspended. The appointed officers adopted a bylaw on June 13, 1955 which excepted current bills and sala-

ries of employees from the requirement of authorization by the membership. This was in direct conflict with, and contravention of, provisions of the constitution of the International Union which remained applicable to the Local. Thereafter, on December 10, 1956, the officers adopted a resolution purporting to increase the expense account of Green and Thacker by $35 a week. This increase was not then nor thereafter approved by the membership of the Local. After control had been restored to the Local, a resolution was passed by the Executive Committee which had the effect of combining the previously authorized expense allowance with their salary, their take-home pay remaining unchanged. Again, this resolution was not adopted by the membership nor was it read at three successive meetings as required by the Constitution
* * *

"The upshot is that Thacker's argument of ratification or authorization must fail. There was, in short, a flagrant abuse of power by statutory fiduciaries in breach of trust." Pgs. 738–740.

The broad scope of § 501(a) has been acknowledged by the Court of Appeals for the Fifth Circuit in Norris and by the Court of Appeals for the Eighth Circuit in Johnson v. Nelson, 325 F.2d 646 (8th Cir., 1963), wherein it was stated:

"Thus it plainly appears that the statute is broad in its reach. Officers and other union representatives may not act adversely to their organization or to the members as a group, or acquire a personal interest which is contrary to the interests of the organization. Being trustees the officers must subvert their own personal interests to the lawful mandates and orders of the organization.

"*The legislative history of the Act demonstrates that Congress intended that it should not be interpreted by the courts narrowly or strictly, but, to the contrary, that its confines are broad.*" Pg. 650 (Emphasis added.) [See also Nelson v. Johnson, 212 F.Supp. 233 (D.C.Minn., 1963) for a comprehensive discussion of the meaning and purposes of Section 501(a)]

The defendants-appellants allege error on the part of the District Court because of the refusal to allow immediate setoffs against the amounts for which the court found defendants Zicarelli and Saviano liable to the Local. Defendant Zicarelli contends that he is entitled to a setoff because of his alleged out-of-pocket expenses incurred during the period he was collecting "per diem" payments and also for overtime payments due him but never collected. Defendant Saviano claims a right to setoff alleging out-of-pocket expenses during the period in question as well as for alleged unclaimed vacation pay. In addition defendant Saviano claims that he was not paid the full salary provided under Article VIII, Section 1 of the By-laws of the Local. The District Court rejected these claims for setoff on the ground that they had not been established by adequate and acceptable proof and on the further ground that the By-laws of the Local and the IBEW Constitution placed the consideration, allowance and acceptance of these claims within the province of the legislative authority of Local 1377. We agree. Clearly such claims should be considered by the Local and acted upon by its membership, in accordance with the provisions of the Local By-laws and the IBEW Constitution.

In view of the conclusions reached by this court no other alleged errors need be considered. We are satisfied that the Trial Judge's findings of fact are supported by substantial evidence and his conclusions of law are correct. The judgment of the District Court is affirmed. The case is remanded to the District Court for further action, pursuant to the orders of the District Court heretofore entered.