Gary ANDERSON, et al., Plaintiffs–Appellants,

v.

INTERNATIONAL UNION, UNITED PLANT GUARD WORKERS OF AMERICA, et al., Defendants–Appellees.

No. 97–1120.

United States Court of Appeals, Sixth Circuit.

Argued March 20, 1998.

Decided July 31, 1998.

E. Michael Morris (argued), Morris & Doherty, Birmingham, Michigan, Charles J. Porter (briefed), Birmingham, Michigan, for Plaintiffs–Appellants.

Bert T. Ross (briefed), Paul J. O'Reilly (argued and briefed), O'Reilly, Rancilio, Nitz, Andrews & Turnbull, Sterling Heights, Michigan, for Defendants–Appellees.

Before: MARTIN, Chief Judge; MERRITT and CLAY, Circuit Judges.

MERRITT, Circuit Judge.

Plaintiffs, three former officers of defendant, The International Union, United Plant Guard Workers of America, were promised early retirement by the union president and the union's Executive Board and they contest the union's subsequent denial of early retirement benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. We conclude that the union president and Executive Board may have had "apparent authority" to bind the union under standard agency principles. We therefore reverse the district court's summary judgment for defendants and remand for further factual findings on this issue.

## I.

Plaintiffs Gary Anderson, Louis Scohy and George Squier are former executive officers of defendant, The International Union, United Plant Guard Workers of America. The other defendants are the International Executive Board, the Pension Committee and the Retirement Plan of the union.

The union is divided into regions, each of which is headed by a regional director. The president, vice-president, secretary/treasurer and regional directors are full-time officers of the union and members of the Executive Board. They are elected by union delegates at the union's convention held every five years. Plaintiffs Anderson and Squier are former union regional directors who were up for reelection in 1995. Plaintiff Scohy is a former vice-president of the union.

The union offers retirement benefits to certain of its employees. The plan is administered and interpreted by the Pension Committee, whose members are appointed by the Executive Board. Under the terms of the plan, full retirement benefits accrue at age 60 and early retirement benefits are available on a reduced basis from the full retirement levels to covered employees aged 55 to 59 with at least five years of service. There is no provision for retirement benefits if the employee is less than 55 years old.

In December 1994, the union was experiencing a financial crisis that forced it to look for ways to reduce costs. One of the ways proposed to accomplish this was to eliminate certain officer positions within the union and offer those currently holding the identified positions "an early retirement window" with full retirement benefits, regardless of whether they would otherwise be eligible for full or early retirement benefits. Plaintiffs Anderson, Scohy and Squier were among those officers offered the special early retirement benefits. It is undisputed that plaintiffs did not meet the eligibility requirements for early retirement as of December 1994.

In order to extend the special early retirement benefits to plaintiffs and the other officers whose positions the union wished to eliminate, the eligibility criteria under the plan would require modification. The union

president, Michael McConville, proposed that the Executive Board, of which he was a member, take action to modify the requirements for early retirement and to make the early retirements become effective in February 1995, rather than waiting to have them approved at the International Convention in May 1995. The Executive Board met and passed a resolution on December 7, 1994, that would modify the eligibility requirements to provide early retirement to plaintiffs and the other officers who would otherwise not have been eligible for early retirement. The resolution required the eligible officers to accept the package by December 8—the next day. After meeting with the union's attorney who assured them he foresaw no legal problems, plaintiffs decided to accept the offer by letters signed on December 8, 1994. Unknown to plaintiffs, however, the union's attorney had written a letter to union president McConville on December 5, two days before his meeting with plaintiffs, stating that there would likely be an administrative or judicial challenge to the modification of the early retirement window based upon a violation of the union constitution and Section 501(a) of the Labor Management and Reporting Disclosure Act, 29 U.S.C. § 501. Although unaware of the letter, the record shows conflicting evidence as to whether plaintiffs had heard that the union's attorney had raised questions about a possible legal challenge to the proposed resolution before its passage.

The Executive Board then passed a resolution on December 9 consolidating, rearranging and dissolving certain regions, as allowed by the union's constitution and by-laws. The regions of which plaintiffs Anderson and Squier had been directors were to be eliminated as of February 15, 1995, the date the two men were to retire under the modified early retirement offer. The office of vice-president, held by plaintiff Scohy, was to be eliminated on the same date under the proposal.

On December 22, 1994, an Executive Board member who opposed the modified early retirement plan threatened to sue the union and its officers on the grounds that the early retirement offer violated the union constitution and Section 501 of the Labor Management Reporting and Disclosure Act. The legal challenge to the December 7 resolution modifying the early retirement plan was based in part on the union constitution that allows the Executive Board to amend the pension plan, but any early retirement benefits must be reduced from "normal" benefits that would accrue at age 60. Because the December 7 resolution offered full retirement benefits, even though none of the men were 60 years of age, it was allegedly in violation of the union constitution unless the constitution was amended. The constitution can only be amended by a full membership vote.

On January 5, 1995, as a result of the threatened lawsuit, union president McConville suggested to the Executive Board that the early retirement and restructuring proposal be withdrawn for the time being and placed before the full membership in May for a vote. The Executive Board voted to defer implementation of the proposal until after the May convention. Plaintiffs continued in their positions until May 1995. Plaintiff Squier ran for reelection in May but lost, plaintiff Anderson did not run for reelection and the membership voted to eliminate the office of Vice–President that was held by Scohy.

Plaintiffs subsequently brought this lawsuit to receive benefits under the plan alleging violations of ERISA sections 1132(a)(1)(B) (breach of contract), 1132(a)(3)(B) (promissory and equitable estoppel), 1054(g)(2) (anti-cutback violation) and 1140 (interference with contractual relations). The district court granted summary judgment to defendants on all counts.

## II.

■ The district court examined various theories under which plaintiffs might recover under ERISA and rejected them all. The relevant issue, however, as we see it, an issue not addressed by the parties or the court below, is whether agency principles of apparent authority bind the union to the terms of the resolution passed December 7 modifying the plan to grant early retirement benefits to plaintiffs.

■ In making this determination, we are guided by the law of agency as developed and interpreted as a matter of federal common law. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under the federal common law of agency, apparent authority arises in those situations where the principal causes persons with whom the agent deals reasonably to believe that the agent has authority. *See Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982 (3d Cir.1995) (supervisor of employee benefits was acting at least with apparent authority as agent of plan to council retiree on early retirement program).

■ It is well-settled that apparent authority (1) results from a manifestation by a person that another is his agent, regardless of whether an actual agency relationship has been formed and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized. *See generally* Restatement (Second) of Agency §§ 8, 27 & cmts. thereto. Specifically, a party may rely upon the apparent authority of union representatives to enter into an agreement where there is basis for such reliance. *National Labor Relations Bd. v. Truckdrivers, Chauffeurs and Helpers, Local Union No. 100,* 532 F.2d 569 570–71 (6th Cir.1976). Because the record before us on this issue is limited, we remand for the district court to make further factual findings on whether principles of apparent authority can bind the union to the December 7, 1994 resolution. We leave it to the district court to decide if further discovery is necessary.

Specifically, the district court should determine if union president McConville, as president of the union and a member of the Executive Board, and the Executive Board, were acting within their apparent or actual authority as representatives of the union's retirement plan and whether plaintiffs reasonably relied upon this authority to enter into the agreement for early retirement benefits. Whether plaintiffs' reliance was reasonable may turn, in part, on whether they were aware of the possible legal challenges to the December 7, 1994, resolution before they accepted the early retirement offer.

■ We note that defendants contend that the failure of the full membership to ratify the resolution rendered it void because ratification is required by the union constitution and bylaws. Apparent authority, however, may attach even when the agent's acts are unauthorized. Restatement (Second) § 159 & cmt. f. *See, e.g., Richards v. General Motors Corp.,* 991 F.2d 1227, 1232 (6th Cir.1993) (employer contractually liable for ERISA benefits based on apparent authority of plan administrator). This circuit and others have repeatedly held that even in the presence of a ratification requirement, a third party may rely upon the apparent authority of the union representatives to enter into an agreement where there is a reasonable basis for such reliance. *See, e.g., Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.,* 799 F.2d 1098, 1111–12 (6th Cir.1986) (side letter to collective bargaining agreement regarding pension payments was valid and binding on union even without required ratification); *accord Kozera v. Westchester–Fairfield Chapter of Nat'l Elec. Contractors Ass'n,* 909 F.2d 48, 54 (2d Cir.1990) (agreement not ratified by union membership as required was nevertheless binding on union under principle of apparent authority); *Moreau v. James River–Otis, Inc.,* 767 F.2d 6, 9–10 (1st Cir.1985) (provision in union constitution that local union cannot bind international union without written consent did not prohibit finding of apparent authority).

While the case law generally refers to the union's relationship with a third party outside the union, usually an employer, the apparent authority principles are relevant to the situation here in defining the relationship between the union as a whole and the plaintiffs. The record amply demonstrates that the Executive Board and plaintiffs reached an agreement on December 8, 1994. On remand, the district court should determine whether plaintiffs knew or should have known about the ratification requirement and, if they did, what bearing that knowledge had on the reasonableness of any reliance plaintiffs placed on the authority of the union president and the Executive Board to enter into the agreement for early retirement benefits.

For the reasons stated above, we reverse the judgment of the district court and remand for further factual findings on whether principles of apparent authority can bind the union to the December 7, 1994, resolution.