RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0170P (6th Cir.)
File Name: 04a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GARY ANDERSON, LOUIS
SCOHY, and GEORGE SQUIER,
　　　*Plaintiffs-Appellees,*

　　　*v.*

THE INTERNATIONAL UNION,
UNITED PLANT GUARD
WORKERS OF AMERICA
(UPGWA), INTERNATIONAL
EXECUTIVE BOARD OF THE
UPGWA, PENSION
COMMITTEE OF THE UPGWA,
and RETIREMENT PLAN OF
THE UPGWA,
　　　*Defendants-Appellants.*

No. 01-1253

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-70710—Gerald E. Rosen, District Judge.

Argued: September 11, 2003

Decided and Filed: June 7, 2004

Before: MERRITT, MOORE, and GILMAN, Circuit
Judges.

---

## COUNSEL

**ARGUED:** Barbara M. Harvey, Detroit, Michigan, for
Appellants. E. Michael Morris, MORRIS & DOHERTY,
Birmingham, Michigan, for Appellees. **ON BRIEF:** Barbara
M. Harvey, Detroit, Michigan, for Appellants. E. Michael
Morris, MORRIS & DOHERTY, Birmingham, Michigan,
Charles J. Porter, OFFICE OF CHARLES J. PORTER,
Clarkston, Michigan, for Appellees.

MOORE, J., delivered the opinion of the court, in which
GILMAN, J., joined. MERRITT, J. (pp. 24-26), delivered a
separate dissenting opinion.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. This appeal
addresses the question of whether the doctrine of apparent
authority bound a union to its officers' self-dealing
transaction entered into in clear violation of the union's
constitution. We hold that it did not.

Gary Anderson ("Anderson"), Louis Scohy ("Scohy"), and
George Squier ("Squier"), Plaintiffs-Appellees, are all former
officers of Defendant-Appellant, International Union, United
Plant Guard Workers of America ("UPGWA"). The other
defendants in this action are the International Executive
Board of the UPGWA ("IEB"), the Pension Committee of the
UPGWA ("Pension Committee"), and the retirement plan of
the UPGWA ("Retirement Plan"). While Plaintiffs-Appellees
were officers of UPGWA and members of the IEB, they voted
in favor of resolutions that would eliminate their positions as
officers and provide them with early-retirement benefits

above those permitted by UPGWA's constitution. After the IEB was threatened with litigation, it deferred implementation of the increased early-retirement benefits until presentation for a vote at the upcoming International Convention. Subsequently, none of the Plaintiffs-Appellees continued in their positions as officers, and the International Convention voted against a resolution providing for the increased early-retirement benefits.

Plaintiffs-Appellees brought suit in the United States District Court for the Eastern District of Michigan, asserting that this denial of the promised early-retirement benefits violated several provisions of the Employee Retirement Income Security Act ("ERISA") of 1974. After the district court granted summary judgment to Defendants-Appellants on all of Plaintiffs-Appellees' claims, a panel of this court reversed and remanded, requesting the district court to make further factual findings on the issue of whether the Union President and the IEB had apparent authority to bind UPGWA to the December 7, 1994 resolution. On remand, the district court denied the parties' cross-motions for summary judgment, conducted a bench trial, and issued an opinion concluding that the Union President and the IEB did have apparent authority to so bind UPGWA, and accordingly awarded Plaintiffs-Appellees the increased early-retirement benefits.

We conclude that Plaintiffs-Appellees could not have *reasonably* relied on the Union President's or the IEB's representations because the increased early-retirement benefits clearly violated UPGWA's constitution. Moreover, we will not enforce this contract, which Plaintiffs-Appellees entered into in violation of their fiduciary duties under § 501(a) of the Labor-Management Reporting and Disclosure Act ("LMRDA") of 1959. Therefore, we **REVERSE** the district court's judgment awarding Plaintiffs-Appellees the increased early-retirement benefits.

## I. OVERVIEW

### A. Factual Background

Plaintiffs-Appellees are former officers of UPGWA and former members of the IEB. UPGWA is a union that represents "Plant Guards, Security Officers, Security Police Officers, fire protection and other employees performing protection and security activities for private and governmental employers." Joint Appendix ("J.A.") at 307 (UPGWA Const. Art. II). UPGWA's officers are elected "at the union's convention which is held every five years." J.A. at 22 (Dist. Ct. Op. 1/17/97).[1] Anderson and Squier were elected regional directors for UPGWA in 1990, and their terms both expired in 1995. Scohy was a vice-president of UPGWA, who was also elected in 1990, and his term also expired in 1995.

In 1993 and 1994, while Plaintiffs-Appellees were in office, "the UPGWA experienced severe financial difficulties and the IEB began exploring ways to cut costs and save money. In November 1994, in order to stem the union's financial losses, UPGWA President Eugene McConville [("McConville")] proposed that the union be restructured so as to eliminate some regional directorships as well as the position of vice-president." J.A. at 23 (Dist. Ct. Op. 1/17/97). As part of this restructuring, McConville proposed offering early retirement to all full-time officers and directors who met certain eligibility requirements. McConville further proposed that the IEB effectuate the restructuring and offer the early-retirement benefits in February 1995, rather than wait for approval "at the international convention in May 1995, because the union's accountants had advised that there would

---

[1] We are relying upon the district court's January 17, 1997 summary judgment opinion for uncontested background facts, and upon the district court's January 4, 2001 bench trial opinion for further factual findings, except to the extent that we consider those factual findings to be clearly erroneous.

be a large savings to the union if it could eliminate the full-time positions prior to the convention." J.A. at 23 (Dist. Ct. Op. 1/17/97).

The IEB held a special meeting on December 6 through 9, 1994, to consider various cost-cutting measures, including McConville's restructuring and early-retirement proposal. At the special IEB meeting, David Kaufman ("Kaufman"), UPGWA's accountant, made a presentation detailing the state of UPGWA's finances and the cost savings projected for McConnville's restructuring and early-retirement proposal. Kaufman reported to the IEB that eliminating the vice-president's position would save UPGWA $535,000 over five years and that eliminating three regional directors would save UPGWA an additional $1.70 million over five years. The resolution proposed by McConville contemplated offering early retirement to officers and directors who met the following eligibility requirements:

1. Must be 50 years of age or over as of December 31, 1994.
2. Retirement must cause one full-time position to be eliminated.
3. Retirement must be taken on February 15, 1995.
4. Acceptance of this window must be made by December 8, 1994.

J.A. at 25 (Dist. Ct. Op. 1/17/97). The resolution further specified that the early-retirement package would contain the following benefits:

1. An officer or director will receive ten (10) years allocated to age and/or service, at their discretion for pension benefit computation.
2. An officer or director shall be entitled to all benefits as stated in Article XI, Sections 1 and 2(e) of the Constitution and By-Laws of the International

Union, United Plant Guard Workers of America (UPGWA), dated May 19, 1990.

J.A. at 25 (Dist. Ct. Op. 1/17/97).

The district court found that absent the December 7, 1994 resolution, none of the Plaintiffs-Appellees would have been eligible for early retirement under the Retirement Plan, and that UPGWA's constitution prohibited offering early retirement to Plaintiffs-Appellees. Article XI, Section 2 of UPGWA's constitution provides:

The International Executive Board is empowered to formulate, maintain, and amend a Pension Retirement Plan to include, but *not to exceed the following*:

(A) All full-time elected officers and appointed International Union representatives who have *at least five years of service* shall be eligible under such Plan.

(B) The normal retirement age shall be Sixty (60) years. Disability and early retirement benefits *shall be in accordance with the normal retirement age.*[2]

---

[2] Article III of UPGWA's constitution specifies that the constitution "can be amended only by a majority vote of the delegates at succeeding Conventions; provided, however, that during the interim between Conventions, this Constitution and By-Laws can be amended by a majority vote of the total International Membership voting in all Local Unions." J.A. at 307. This article further provides that the IEB, by a two-thirds vote, is empowered "to make such interim changes in this Constitution and By-Laws applicable only until the next regular Constitutional Convention, *as may from time to time be necessary to conform this Constitution and By-Laws with any applicable laws.*" J.A. at 307-08 (UPGWA Const. Art. III) (emphasis added).

McConnville conceded at trial that the early-retirement benefits embodied in the December 7, 1994 resolution "were not 'in accordance

J.A. at 310 (UPGWA Const. Art. XI, § 2 (emphases added)). Under the Retirement Plan, "a covered employee is entitled to full retirement only if he is at least 60 years of age, or a reduced retirement benefit if he is under age 60 but over age 55 and has completed at least five years of service. No provision is made for retirement under age 55."[3] J.A. at 25-26 (Dist. Ct. Op. 1/17/97). To be eligible for either normal or early-retirement benefits under the Retirement Plan, employees must have completed five years of service. As of February 15, 1994, neither Anderson nor Scohy was fifty-five years old and neither had completed at least five years of service; Squier was fifty-nine years old, but had not completed at least five years of service.

On December 7, 1994, before voting on the early-retirement proposal, Plaintiffs-Appellees asked Gordon Gregory ("Gregory"), UPGWA's attorney, whether he foresaw any legal problems with the early-retirement proposal. According to Anderson and Scohy, Gregory told them that he was not aware of any problems. However, two days earlier, on December 5, 1994, Gregory had written to McConville stating the opinion "that he believed that it was likely that there would be an administrative and/or judicial challenge to the early retirement window based upon a violation of Article XI, Section 2 of the Union Constitution

---

with normal retirement age' under Article XI, Section 2(b)." J.A. at 616 (Dist. Ct. Op. 1/4/01).

[3] Article XI of UPGWA's Retirement Plan specifies that the IEB has "the right at any time and from time to time to terminate, modify or amend in whole or in part any or all of the provisions of the Plan." J.A. at 292. The IEB is designated as the "Plan Administrator" for purposes of the Employee Retirement Income Security Act ("ERISA") of 1974, but a Pension Committee, composed of three members designated by the IEB, is responsible for daily administration and interpretation of the Retirement Plan. When the events giving rise to this litigation occurred, Scohy was the Chairman of the Pension Committee.

and Section 501(a) of the Labor Management Reporting and Disclosure Act." J.A. at 26 (Dist. Ct. Op. 1/17/97). Although it is not reflected in the district court's January 4, 2001 opinion, at trial all of the Plaintiffs-Appellees testified that Article XI, Section 2 of the UPGWA's Constitution was discussed at the IEB meeting prior to the vote on the early-retirement proposal.

On December 7, 1994, the IEB voted in favor of adopting the early-retirement proposal by a margin of eight in favor and three against; Plaintiffs-Appellees all voted in favor of the proposal.[4] On December 8, 1994, Plaintiffs-Appellees all accepted in writing the increased early-retirement benefits. According to their acceptance letters, Anderson would receive a monthly pension of $1,682.95, Scohy would receive a monthly pension of $3,437.87, and Squier would receive a monthly pension of $2,478.82.

"On December 9, [1994], the IEB passed another resolution, this one consolidating, rearranging, and dissolving certain regions." J.A. at 30 (Dist. Ct. Op. 1/17/97). The regions for which Squier and Anderson had been directors were "to be dissolved effective February 15, 1995, i.e., the date on which Plaintiffs retirements under the December 7 resolution were to become effective." J.A. at 30 (Dist. Ct. Op. 1/17/97). The resolution did not eliminate the vice-president's position held by Scohy because that required amending UPGWA's constitution through a vote at the International Convention in May 1995.

On December 22, 1994, Jack Webb ("Webb"), a regional director, wrote a letter to McConville asserting that by voting in favor of the increased early-retirement benefits, members of the IEB violated Article XI, Section 2 of UPGWA's

---

[4] Jack Webb, Ronald Warfield, and Denise Sylvestre voted against the December 7, 1994 resolution.

constitution and their fiduciary duties, and threatening to sue if the IEB did not withdraw the December 7, 1994 resolution. In an opinion letter written on January 4, 1995, Gregory confirmed the possibility of a viable legal challenge to the early-retirement benefits embodied in the December 7, 1994 resolution. On January 5, 1995, in response to Webb's threatened lawsuit, McConville circulated a referendum ballot to members of the IEB asking whether they wanted to delay implementation of the early-retirement benefits and restructuring until authorized through a vote at the International Convention. The IEB voted to defer implementation of the resolutions until the International Convention, and the Plaintiffs-Appellees continued in their offices until that time. At the International Convention, Squier "ran for re-election as regional director, but lost. Anderson did not seek re-election," and the membership voted to eliminate the vice-president's position held by Scohy. J.A. at 33 (Dist. Ct. Op. 1/17/97). Additionally, the membership voted against adopting the increased early-retirement benefits.

## B.  Procedural Background

Plaintiffs-Appellees filed various lawsuits against UPGWA and other defendants, including two state-court actions and this federal action asserting ERISA violations. On January 17, 1997, the district court issued an opinion rejecting all of Plaintiffs-Appellees' ERISA claims and granting summary judgment to Defendants-Appellants. Then, on July 31, 1998, a panel of this court reversed and remanded, indicating that the relevant issue was whether McConville and the IBE had apparent authority to bind UPGWA to the December 7, 1994 resolution. *Anderson v. Int'l Union, United Plant Guard Workers*, 150 F.3d 590, 592 (6th Cir. 1998).

In this court's 1998 opinion, the panel explained that "apparent authority (1) results from a manifestation by a person that another is his agent, regardless of whether an actual agency relationship has been formed and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Id*. at 593. Because the record on the issue of apparent authority was limited, the panel remanded this case instructing the district court "to make further factual findings on *whether* principles of apparent authority can bind the union to the December 7, 1994 resolution." *Id*. (emphasis added). More specifically, the panel instructed the district court to:

> determine if union president McConville, as president of the union and a member of the [IEB], and the [IEB], were acting within their apparent or actual authority as representatives of the union's retirement plan and whether plaintiffs reasonably relied upon this authority to enter into the agreement for early retirement benefits. Whether plaintiffs' reliance was reasonable may turn, in part, on whether they were aware of the possible legal challenges to the December 7, 1994, resolution before they accepted the early retirement offer.

*Id*. (citations omitted). The panel further instructed that, "Apparent authority . . . may attach even when the agent's acts are unauthorized [and] that even in the presence of a ratification requirement, a third party may rely upon the apparent authority of the union representatives to enter into an agreement where there is a reasonable basis for such reliance." *Id*.

On August 31, 1999, the district court issued an opinion denying the parties' post-remand motions for summary judgment. The court concluded that Article XI, Section 1 of the UPGWA Retirement Plan, Article XII, Section 5 of the UPGWA constitution, and McConville's statements manifested apparent authority in McConville and the IEB to offer the early-retirement benefits encompassed in the December 7, 1994 resolution. The district court found it

relevant that the Retirement Plan document provides: "The Union, **acting through its International Executive Board**, reserves and **shall have the right at any time and from time to time** to terminate, **modify or amend in whole or in part any and all provisions in the Plan.**" J.A. at 74 (Dist. Ct. Op. 8/31/99) (emphases in original). The district court also found it relevant that the UPGWA constitution "provides that the IEB 'shall decide all questions involving interpretation of this Constitution and By-Laws, between Conventions." J.A. at 75. Additionally, the district court found that prior to their accepting the early-retirement benefits, McConville assured Plaintiffs-Appellees that the early-retirement proposal had been checked by the attorneys and accountants and was legal, and that Gregory had assured Plaintiffs-Appellees that the early-retirement proposal was legal.

In its August 31, 1999 opinion, the district court also concluded, however, that there was a genuine issue of material fact regarding whether Plaintiffs-Appellees' reliance on these manifestations of apparent authority was reasonable. J.A. at 77 (Dist. Ct. Op. 8/31/99). The district court noted that "whether Plaintiffs' reliance was reasonable turns on whether they were aware of the [UPGWA] constitution's requirement of a vote of the full membership on the early retirement proposal and whether they were aware of the possible legal challenges to the December 7, 1994 resolution before the[y] accepted the early retirement offer." J.A. at 77 (Dist. Ct. Op. 8/31/99) (citing *Anderson*, 150 F.3d 590)). The district court found that the parties had presented conflicting testimony regarding whether the Plaintiffs-Appellees were told prior to accepting the early-retirement proposal that there was the possibility of a legal challenge to the December 7, 1994 resolution, thereby creating a genuine issue of material fact and precluding summary judgment.

The district court conducted a six-day bench trial in December 1999. After hearing testimony and considering exhibits, the district court issued an opinion on January 4, 2001. In its opinion, the district court adhered to its previous conclusion that UPGWA manifested authority in the IEB and McConville to offer the early-retirement benefits. Based upon testimony heard at trial, the district court then concluded that Plaintiffs-Appellees' reliance on the IEB's and McConville's manifestations of authority was reasonable. Specifically, Ronald Warfield ("Warfield"), an IEB member and also a Pension Committee member, testified that the Retirement Plan could be amended via an IEB resolution. Additionally, all three Plaintiffs-Appellees testified that they relied upon Gregory's assurances "that there were no legal problems with the early retirement proposals." J.A. at 643 (Dist. Ct. Op. 1/4/01). Although Gregory testified that he told Plaintiffs-Appellees that he had written on December 5, 1994, an opinion letter for McConville explaining the possibility of a § 501 challenge, the district court credited Plaintiffs-Appellees' testimony that Gregory had not told them about the letter. Moreover, all of the witnesses at trial, including Gregory and Webb, testified that in response to an inquiry by Webb, Gregory had stated that he was not aware of any legal problems with the early-retirement proposal under either Article XI, Section 2 of UPGWA's constitution or under § 501 of the LMRDA. Because Gregory had been UPGWA's legal counsel for more than thirty-five years, the district court found "that it was reasonable for Plaintiffs to rely upon Mr. Gregory's assurances that there were no legal problems with the early retirement plan." J.A. at 643-44 (Dist. Ct. Op. 1/4/01). Moreover, the district court found that even if Plaintiffs-Appellees may have heard that Webb might challenge the early retirement proposals, it was reasonable for Plaintiffs-Appellees to rely upon Gregory's and McConville's assurances that there were no legal problems with the plan. Therefore, the court concluded that Plaintiffs-Appellees "reasonably relied upon the apparent authority of the IEB to adopt the Resolution on December 7, 1994 providing for an early retirement plan in accepting early retirement pursuant to that Resolution on December 8, 1994" and that UPGWA "is bound by the terms of the resolution passed December 7,

1994 modifying the UPGWA Retirement Plan to grant early retirement benefits to Plaintiffs." J.A. at 645 (Dist. Ct. Op. 1/4/01).

All defendants timely appealed the district court's January 4, 2001 order.

## II. ANALYSIS

### A. Standard of Review

"In considering a district court's decision following a bench trial," we review for clear error the district court's findings of fact, and we review de novo the district court's conclusions of law. *Overton Distribs., Inc. v. Heritage Bank*, 340 F.3d 361, 366 (6th Cir. 2003) (internal quotation marks omitted). When deciding cases that turn upon the interpretation of a union's constitution, "Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." *United Food & Commercial Workers Int'l Union Local 911 v. United Food & Commercial Workers Int'l Union*, 301 F.3d 468, 478 (6th Cir. 2002) (quoting *United Bhd. of Carpenters, Dresden Local No. 267 v. United Bhd. of Carpenters, S. Cent. Ohio Dist. Council*, 992 F.2d 1418, 1423 (6th Cir. 1993)).

### B. Apparent Authority

When we remanded this case, we instructed the district court to make further findings on the issue of *whether* McConville or the IEB had apparent authority to bind UPGWA to the early-retirement benefits embodied in the December 7, 1994 resolution. *Anderson*, 150 F.3d at 592-93. After conducting a bench trial, the district court found that UPGWA manifested to Plaintiffs-Appellees that McConville and the IEB were its agents for the purposes of amending the Retirement Plan, and that Plaintiffs-Appellees' reliance upon

those manifestations was reasonable; therefore, the district court concluded that McConville and the IEB had apparent authority to bind UPGWA to December 7, 1994 resolution. Although we commend the district court for its thorough and thoughtful opinion, we conclude that the district court committed clear error by finding that the Plaintiffs-Appellees' reliance on McConville's and the IEB's ostensible authority to bind UPGWA in this manner was reasonable.

An agent acting with apparent authority may bind his or her principal to a contract with a third party. *Id*. As we explained in *Anderson*, apparent authority arises in situations when the principal manifests to a third party that an agent is authorized to act upon the principal's behalf and the third party reasonably relies upon that authority. A third party may not, however, *reasonably* rely upon an agent's ostensible authority if the third party knows that the agent is not authorized to act in a particular manner. *See Dayton Bread Co. v. Montana Flour Mills Co.*, 126 F.2d 257, 261 (6th Cir. 1942). In *Dayton Bread Co.*, we held that the third party did not reasonably rely upon the agent's authority to bind the principal because it is well established that a salesman "has no implied authority to bind his principal by an absolute sale or contract," and because the contracts at issue were prohibited under applicable law. *Id*. In *Dayton Bread Co.*, we explained

> The principal is often bound by the acts of his agent in excess of or in abuse of his actual authority, but this is only true between the principal and third persons who, *believing and having a right to believe that the agent was acting within and not exceeding his authority*, would sustain a loss if the act was not considered that of the principal. . . . If . . . a third person dealing with an agent *knows he is acting under a circumscribed and limited authority and that his act is in excess of or an abuse of the authority actually conferred, then clearly the principal is not bound*.

*Id.* (emphases added).[5]

In this case, Plaintiffs-Appellees had actual knowledge of the limitations on pension benefits imposed by Article XI, Section 2 of UPGWA's constitution and should have known the appropriate procedures for amending UPGWA's constitution.[6] Although Plaintiffs-Appellees may have believed that McConville and the IEB had the authority to bind UPGWA to the December 7, 1994 resolution, we conclude that Plaintiffs-Appellees' actual knowledge and imputed knowledge made this reliance unreasonable. Therefore, we conclude that McConville and the IEB did not have apparent authority to offer the increased early-retirement benefits, and thus UPGWA is not bound by the December 7, 1994 resolution.[7]

---

[5] Although *Dayton Bread Co. v. Montana Flour Mills Co.*, 126 F.2d 257 (6th Cir. 1942), is a diversity case applying Ohio law, we find its discussion of general agency principles instructive and consistent with other authorities. *See Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 401 (10th Cir. 1986); *Pasco County Peach Ass'n v. J.F. Solley & Co.*, 146 F.2d 880, 883 (4th Cir. 1945); Harold Gill Reuschlein & William A. Gregory, *The Law of Agency and Partnership* 63-64 (2d ed. 1990).

[6] Plaintiffs-Appellees' actual and imputed knowledge sufficiently distinguishes the present case from *Central States Southeast & Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098 (6th Cir. 1986) (en banc), *cert. denied*, 479 U.S. 1086 (1987), in which we held that a union's agent could bind the union based upon the doctrine of apparent authority even in the presence of a membership-ratification requirement.

[7] Although throughout much of this litigation the parties have focused on ERISA, we note that our outcome today does not disrupt the terms of an ERISA plan. Plaintiffs-Appellees may not claim benefits under the terms of the Retirement Plan because the plan was never validly amended. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir.) (en banc), *cert. denied*, 524 U.S. 923 (1998). As will be discussed below, Plaintiffs-Appellees have not established all of the elements of estoppel. Moreover, even if Plaintiffs-Appellees had established all of the elements of

## C.  Section 501 of the LMRDA

As an alternative basis for our holding, we conclude that Plaintiffs-Appellees may not enforce the increased early-retirement benefits because Plaintiffs-Appellees violated § 501(a) of the LMRDA. Section 501 of the LMRDA imposes fiduciary duties upon the officers and agents of labor unions and provides union members with a cause of action against union officers and agents who violate those duties. Section 501(a)[8] defines the scope of union officers' and agents' fiduciary duties, and § 501(b) specifies prerequisites to bringing suit to redress violations of § 501(a). We recognize that when defining the scope of fiduciary duties imposed by § 501(a), courts must be cognizant of "the special problems and functions of a labor organization." 29 U.S.C. § 501(a). We also recognize, however, that Congress passed § 501(a) to curb abusive practices by union officials.

---

estoppel, we are reluctant "to allow estoppel to override the clear terms" of an ERISA plan. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003).

[8] Subsection (a) provides, in pertinent part:
The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to *manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization*, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.
29 U.S.C. § 501(a).

*Morrissey v. Curran*, 650 F.2d 1267, 1272-73 (2d Cir. 1981). Although the precise contours of the fiduciary duties imposed by § 501(a) are not fully delineated in the statutory text, it is clear that Congress intended unions' constitutions and by-laws to play a major role in shaping these duties. *See Guzman v. Bevona*, 90 F.3d 641, 648 (2d Cir. 1996). Section 501(a) directs union officers and agents to expend the union's money and property, "*in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder.*" 29 U.S.C. § 501(a) (emphasis added). We have previously held that union officers and agents violate § 501(a) by engaging in transactions that provide a direct personal benefit to themselves and that contravene their union's constitution. *McCabe v. Int'l Bhd. of Elec. Workers Local Union No. 1377*, 415 F.2d 92, 97-98 (6th Cir. 1969) (holding that union officers violated § 501(a) by accepting reimbursement for out-of-pocket expenses incurred while conducting union business in addition to per diem payments that were not authorized by their union's constitution).[9] Although § 501(a) imposes fiduciary duties beyond those outlined in a union's constitution and by-laws, it is not necessary for us to expound upon the boundaries of § 501(a) because in this case the early-retirement benefits Plaintiffs-Appellees seek to enforce violate UPGWA's constitution.

UPGWA's constitution empowers the IEB to create a pension plan for all full-time officers and appointed representatives. J.A. at 310 (UPGWA Const. Art. XI, § 2).

---

[9]Our position is consistent with other circuits that have addressed this issue. *See, e.g.*, *Guzman v. Bevona*, 90 F.3d 641, 647-48 (2d Cir. 1996) (holding that union officers violated § 501(a) by expending union funds on surveillance of union member, who criticized the union's leadership, in violation of the union's constitution); *Brink v. DaLesio*, 667 F.2d 420 (4th Cir. 1981); *Stelling v. Int'l Bhd. of Elec. Workers Local Union No. 1547*, 587 F.2d 1379 (9th Cir. 1978), *cert. denied*, 442 U.S. 944 (1979); *Sabolsky v. Budzanoski*, 457 F.2d 1245 (3d Cir.), *cert. denied*, 409 U.S. 853 (1972).

UPGWA's constitution specifies, however, that only full-time officers and union representatives who have attained at least five years of service are eligible for pension benefits. Moreover, UPGWA's constitution specifies that qualifying individuals may receive normal retirement benefits at age sixty and that "early retirement benefits *shall be in accordance with the normal retirement age*." J.A. at 310 (emphasis added). It is clear that UPGWA's constitution allows for early-retirement benefits to be offered only on a reduced basis, and also requires pension recipients to have worked for UPGWA for at least five years; a contrary interpretation would be unreasonable and not entitled to deference. It is undisputed that as of December 7, 1994, Plaintiffs-Appellees were not entitled to any retirement benefits under the Retirement Plan and that the early-retirement benefits encompassed in the December 7, 1994 resolution exceeded the limits imposed by UPGWA's constitution. Plaintiffs-Appellees were to receive a direct personal benefit from the December 7, 1994 resolution, because at that time none of them were eligible for any retirement benefits. Additionally, the retirement benefits embodied in the December 7, 1994 resolution exceeded the limits imposed by UPGWA's constitution, and the IEB did not amend the constitution.[10] Therefore, we conclude that Plaintiffs-Appellees violated their fiduciary duties under § 501(a).[11] This conclusion does not end our analysis,

---

[10]Moreover, the IEB could not have amended UPGWA's constitution in this manner, as the IEB is only authorized to amend temporarily the constitution to conform the constitution to changes in the law. J.A. at 307-08 (UPGWA Const. Art. III).

[11]Because the December 7, 1994 resolution was not validly authorized by the International Convention, *see supra* Part II.B., the more deferential "manifestly unreasonable" standard that the Second Circuit first enunciated in *Morrissey v. Curran*, 650 F.2d 1267, 1274 (2d Cir. 1981), is inapplicable. In *Morrissey*, the Second Circuit held that authorization is not a complete defense to self-dealing transactions entered

however, because Defendants-Appellants did not bring a § 501 suit against Plaintiffs-Appellees.

The procedural posture of this case is unique, in that neither UPGWA nor its members brought a § 501 action against Plaintiffs-Appellees; rather Defendants-Appellants assert that § 501(a) provides a defense to Plaintiffs-Appellees' breach of contract action. No circuit has yet issued a published opinion expressly deciding whether § 501(a) can be asserted as a defense to a breach of contract action. *But see Trs. of the Operative Plasterers' & Cement Masons' Local Union Officers & Employees Pension Fund v. Journeymen Plasterers' Protective & Benevolent Soc'y, Local Union No. 5,* 794 F.2d 1217, 1220 (7th Cir. 1986) [hereinafter *Cement Masons*] (questioning whether § 501(a) can be raised as a defense to a breach of contract action because a violation of § 501(a) does not render a contract intrinsically illegal). A basic principle of contract law supports our conclusion that § 501(a) can be asserted as a defense to this breach of contract action.

Federal courts may not enforce a contract if the result would be to compel a violation of the law. *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 77 (1982). As explained above, the early-retirement benefits resolution violated § 501(a) of the LMRDA. In *Kaiser Steel,* the Supreme Court refused to enforce a collective bargaining agreement provision that was illegal under federal labor and antitrust laws. *Kaiser Steel,* 455 U.S. at 85-87. It is true that the federal labor and antitrust laws at issue in *Kaiser Steel* made intrinsically illegal the collective bargaining provision under consideration, whereas § 501(a) does not make intrinsically illegal the early-

---

into by union officers and agents, but that if such transactions are validly authorized, then courts should not interfere unless the transaction "is so manifestly unreasonable as to evidence a breach of fiduciary obligation imposed by § 501(a)." *Id*.

retirement proposal; however, we do not think that this distinction warrants a different result in this case. *See id*; *Cement Masons,* 794 F.2d at 1220. A union or its members can ordinarily obtain an injunction prohibiting payments that were authorized by union officers in breach of their fiduciary duties or obtain reimbursement for such payments. 29 U.S.C. § 501(a); *see also Guzman,* 90 F.3d at 648; *Council 49, Am. Fed'n of State, County & Mun. Employees Union v. Reach,* 843 F.2d 1343, 1347-49 (11th Cir. 1988); *Kerr v. Shanks,* 466 F.2d 1271, 1276 (9th Cir. 1972); *McCabe,* 415 F.2d at 98; *Local No. 92, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Norris,* 383 F.2d 735, 737-40 (5th Cir. 1967).

In the case at bar, because the IEB deferred implementation of the increased early-retirement benefits and the International Convention ultimately voted against their implementation, an injunction against implementation of the benefits was not a possibility. Denying UPGWA and its members use of § 501(a) as a defense in this situation, where they were unable to use it offensively, makes little sense and would thwart the purposes of that provision.[12] Moreover, "Refusing to enforce a promise that is illegal under the antitrust or labor laws is not providing an additional remedy contrary to the will of Congress. . . .[A]ny one sued upon a contract may set up as a defen[s]e that it is a violation of the act of Congress, and if found to be so, that fact will constitute a good defen[s]e to the action." *Kaiser Steel,* 455 U.S. at 82 n.7 (quotation omitted).

Plaintiffs-Appellees argue that UPGWA may not rely upon illegality as a defense to enforcement of the early-retirement benefits because either the IEB or the convention delegates

---

[12]Because § 501(a) is being raised as a defense, neither Michigan's statute of limitations for breach of fiduciary duty claims nor the doctrine of laches prevents Defendants-Appellants from relying upon this provision. Likewise, the procedural requirements contained in § 501(b) are not applicable.

could have eliminated the § 501 problem by amending UPGWA's constitution. We reject this argument. First, the IEB did not have the authority to amend UPGWA's constitution in this manner. Second, if UPGWA was required to amend its constitution when its officers exceeded their powers thereunder, the constitution would not serve its purpose of limiting the officers' powers. Third, we question whether a vote to amend UPGWA's constitution could cure after-the-fact this self-dealing violation of § 501(a). *See* Janice R. Bellace & Alan D. Berkowitz, *THE LANDRUM-GRIFFIN ACT: Twenty Years of Federal Protection of Union Members' Rights* 299 (1979).

Therefore, we hold that § 501(a) can properly be raised by a union or its members as a defense to a transaction entered into by union officials, which grants those officials a direct personal benefit in violation of the union's constitution. This holding is necessary to ensure that union officers or agents do not thwart the purposes of § 501(a) by binding unions to contracts with union officials that violate this provision.

**D.  Estoppel and Ratification**

Our holding that the December 7, 1994 resolution constitutes an unenforceable contract should not be interpreted as foreclosing the possibility of estoppel in an appropriate case. This, however, is not an appropriate case.

The elements of estoppel are: (1) conduct or language amounting to a representation of fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on such that the party asserting the estoppel has the right to believe it was so intended; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.

*Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Here, Plaintiffs-Appellees did not detrimentally or justifiably rely upon the December 7, 1994 resolution. In January 1995, the IEB voted to rescind the resolutions authorizing the increased early-retirement benefits, and Plaintiffs-Appellees all continued in their respective offices until the end of their terms in May 1995. Therefore, Plaintiffs-Appellees did not rely to their detriment on the increased early-retirement benefits. As discussed above, the IEB exceeded its authority under UPGWA's constitution in offering the early-retirement benefits, and Plaintiffs-Appellees had actual knowledge of the limitations imposed by Article XI, Section 2 of UPGWA's constitution. Therefore, Plaintiffs-Appellees' expectation that they would receive the increased early-retirement benefits was not justifiable. Moreover, Plaintiffs-Appellees cannot assert estoppel when the passage of the December 7, 1994 resolution constituted a breach of fiduciary duty under § 501(a) of the LMRDA. *See Meyers v. Moody*, 693 F.2d 1196, 1208 (5th Cir. 1982), *cert. denied*, 464 U.S. 920 (1983) ("The doctrine of estoppel is for the protection of innocent persons, and only innocent persons may invoke it.").

Nor may Plaintiffs-Appellees obtain the early-retirement benefits embodied in the December 7, 1994 resolution on the theory of ratification. On appeal, Plaintiffs-Appellees strenuously assert that UPGWA ratified the early-retirement benefits by eliminating their positions and thereby retaining the cost savings associated with the early-retirement proposal. It is true, "Ratification occurs where the principal receives and retains the benefits of a transaction with full knowledge of all of material facts." *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 374 (6th Cir. 1993), *cert. denied*, 510 U.S. 1193 (1994). In this case, however, elimination of Plaintiffs-Appellees' positions was not dependent upon providing the increased early-retirement benefits. Although Plaintiffs-Appellees, as members of the IEB, may not have voted to eliminate their positions absent the generous early-retirement

offer, the elimination of their offices could and did occur without their consent. UPGWA's constitution gave the IEB the authority to consolidate regions and eliminate directors' positions, which the IEB did through the January 24, 1995 resolution, and UPGWA's constitution gave the convention delegates the authority to eliminate the vice-president's position, which the delegates did at the International Convention in May 1995.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment awarding Plaintiffs-Appellees the requested increased early-retirement benefits. Additionally, Plaintiffs-Appellees' motions to dismiss and motion for costs are **DENIED**.

---

### DISSENT

---

MERRITT, Circuit Judge, dissenting. The plaintiffs entered into an agreement with the union to give up their jobs, salaries and expectations of future retirement benefits in return for yearly early retirement benefits of approximately $20,000 for Anderson, $30,000 for Squier and $40,000 for Scohy — less than half their salaries. There is no showing of bad faith. They responded to the union's offer made by its President, originating with its accountants and blessed as to legality by its counsel. The district court was correct to conclude that the Union, through its retirement plan, as well as the actions of its president and the advice of its counsel, manifested authority in the Board to offer the early retirement contracts to the plaintiffs. The Retirement Plan specifically provides that the Union "acting through its...Board" shall have the right to modify the plan. Moreover, the Union's constitution provides that the Board "shall decide all questions involving interpretation of the Constitution and By-Laws, between Conventions." Both the Union President and the Union's attorney, Gordon Gregory, assured the plaintiffs that there were no legal problems with the retirement plan.

The district court was also correct that the plaintiffs were reasonable in relying on such manifestations. Their beliefs that Board approval would bind the Union were reinforced by Board member Ronald Warfield, who at the time was a member of the pension committee; by Union President McConville, who presented the plan to them to begin with as a way to save the Union money and who assured them that the Board could bind the Union to such a plan; and by Gordon Gregory, who had been an attorney for the Union for 35 years, and whose opinion they sought and who repeatedly assured them that the Board action would be sufficient to make the plan binding. President McConville and Attorney

Gregory even testified that they thought the plaintiffs were reasonable in believing that Board approval could make the plan binding. It is true that the plaintiffs were made aware that there might be some legal challenge to the retirement plan, but that alone is not sufficient to make their reliance unreasonable in light of all the assurances they received, especially when the plan was not even their idea, but rather was presented to them as a way for the Union to save money. Indeed, the plaintiffs were praised for sacrificing their own jobs in order to save the Union money.

The Union argues that the plaintiffs cannot claim reasonable reliance on Attorney Gregory's advice when Gregory advised them otherwise on January 4th, recommending that the Board rescind the vote. But Gregory's advice on January 4th is irrelevant to the question of whether a contract had been created on December 7th. By that point the plaintiffs had already relied on the apparent authority of the President and the Board and the advice of counsel. Had the plaintiffs been the ones who sought to get out of the December 7th agreement while the Union sought to enforce it, the plaintiffs would likely have been bound.

The Union believes that the early retirement agreement violates Section 501 of the Labor Management Reporting and Disclosure Act (LMRDA), which makes it a breach of duty for a Union official to expend Union money in violation of the Union constitution, and which provides a cause of action for individual Union members when the Union's constitution is so violated. 29 U.S.C.A. § 501 (2003). But Section 501 does not provide that a Union may itself persuade otherwise innocent Union officers to sign a contract and then use that provision as a defense to the contract that the Union has entered into. As the majority notes, there is no precedent for allowing a Union to use Section 501 in this manner.

Moreover, even if a Union's officers had breached a Section 501 duty by entering into such a contract, that does not void the contract as illegal. Neither the language of the statute nor the case-law contemplates rendering the union contract void. The majority seems to admit this point, but downplays its significance. A contract should not be rendered void at the behest of the party that induced its formation at the expense of actors who lack culpability or any wrongful intent. If the Union members claim a breach of duty by the plaintiffs, that claim should be pursued in an action for damages in tort or restitution under the statute. Voiding the contract and leaving the plaintiffs out in the cold is too drastic a remedy and has no relation to any damages Union members may have suffered.

Furthermore, as I explained above, I do not believe the plaintiffs breached a duty to the Union members in the first place. Again, there was no showing of bad faith on their part, and the retirement plan was not their idea, but rather was the idea of the Union accountant, and was presented to them by the Union president as a way of saving the Union money. We should not now allow the Union to avoid the contract it drafted and asked them to sign, especially by means of a statutory provision that only provides a cause of action for third-party Union members. Doing so turns Section 501 into a one-sided escape route for Unions that Congress never intended.

For the aforementioned reasons, I respectfully **DISSENT**.